UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| AMIE O'BOYLE, | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 5: 23-061-DCR |
| V. | ) ) ) | |
| MADISON COUNTY, KENTUCKY, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Deanna Anglin, Austin Pingleton, and Michael Pingleton, deputy jailers at the Madison County Detention Center in Madison County, Kentucky (hereafter, jointly referenced as the "deputy jailers"), have moved to dismiss some of the claims asserted against them by Plaintiff Amie O'Boyle  [Record No. 23]  O'Boyle originally filed suit against Madison County, Kentucky, and others, on February 23, 2023.  She asserted a variety of claims stemming from the alleged deprivation of medical care while she was detained at the Madison County Detention Center.[1]  [Record Nos. 1, 6, and 9] O'Boyle then filed an Amended Complaint on April 19, 2023, asserting claims against the deputy jailers in their individual capacities. [Record Nos. 6 and 9]

The deputy jailers contend that O'Boyle's Amended Complaint fails to state valid claims against them for deliberate indifference under 42 U.S.C. § 1983 and negligence under

---

[1] The Court terminated Defendant Madison County, Kentucky as a party in this matter on June 13, 2023, after granting its motion to dismiss for failure to state a claim.  [Record No. 15]

-1-

Kentucky law.² [Record No. 23] The defendants' motion will be granted because O'Boyle's Amended Complaint contains insufficient factual allegations connecting the deputy jailers to the claims she raises.

## I. Background

O'Boyle was arrested on August 20, 2021, for careless driving, disregarding a traffic light, operating a motor vehicle under the influence of a controlled substance, and resisting arrest. [Record No. 10] She was held at the Madison County Detention Center following her arrest on these charges. O'Boyle contends that officials at the detention center "knew that [she] had a serious mental health condition for which she needed medication." [Record No. 23] O'Boyle's husband provided funds for an independent forensic psychological expert to conduct an evaluation of O'Boyle's mental condition. Thereafter, officials at the detention center filed a judicial petition to declare O'Boyle disabled before transferring her for treatment.³ [*Id*.] She entered Eastern State Hospital (a psychiatric institution in Virginia) on January 21, 2022, where she briefly recovered before being released. [*Id*.]

O'Boyle contends that officials at the Madison County Detention Center violated her rights by refusing to treat her serious medical needs, placing her in solitary confinement, and torturing her. [Record Nos. 1 and 10] Further, O'Boyle contends that she did not receive

---

² The plaintiff voluntary dismissed her claim against the deputy jailers for violating the Kentucky Constitution's prohibition of cruel and unusual punishment. [Record No. 27] Further, as the defendants correctly note in their supporting memorandum, there is no private right of actions for violations of the Kentucky Constitution. [*See* Record No. 23, citing *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 536 (Ky. 2011), and *Williams v. City of Stanford*, 533 F.Supp.3d 512, 533-34 (E.D. Ky. 2021).]

³ Following receipt of the psychological report, the Madison County District Court was petitioned to formally declare O'Boyle disabled under Kentucky law. KRS § 202A. [Record No. 10]

necessary medication for her mental health issues during the five months of her detention. [*Id*.] O'Boyle also raised for the first time in her Amended Complaint claims that she was stripped naked, had water cut off, and was left to wallow in her own feces after being required to use toilet water for drinking. [Record No. 10] However, the only specific claims asserted against the deputy jailers is that they "pepper sprayed" and "tortured" her. [*Id*.]

## II. Legal Standard

Federal pleading standards demand "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts must "construe the Complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (discussing Fed. R. Civ. P. 12(b)(6)). The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1986). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). This standard requires "either 'direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 772 (E.D. Ky. 2017) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). Dismissal is warranted when this standard is not met.

### III. Arguments

The deputy jailers first contend that O'Boyle's Amended Complaint fails to state an actionable claim of deliberate indifference against them in their individual capacities. To state a claim for individual liability under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In a civil rights action against a group of government officials, "each defendant's liability must be individually assessed to ensure that no defendant is improperly held liable for the conduct of another." *Apsey v. Chester Township*, 608 F. App'x 335, 339 (6th Cir. 2015). As the deputy jailers correctly emphasize, "a generalized pleading that refers to all defendants generally and categorically," instead of alleging with specificity "facts that demonstrate what each defendant did to violate the asserted constitutional right" cannot constitute a cognizable claim under § 1983. *Marcilis v. Township of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012).

To properly assert a claim of deliberate indifference, a pretrial detainee must demonstrate that she had an objectively serious medical need ***and*** that the defendant either (a) acted intentionally to ignore the serious medical need, or (b) recklessly failed to act reasonably to mitigate the risks posed by the serious medical need. *See Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021). For cases involving withheld medical care, the United States Court of Appeals for the Sixth Circuit requires a plaintiff to demonstrate both objective and subjective components of a violation to prove deliberate indifference. *See Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 315 (6th Cir. 2023). The "objective component" addresses the conditions leading to the alleged violation: it "requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Constitution." *Griffith v.*

*Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020) (citation and brackets omitted). The "subjective" component, on the other hand, addresses the official's state of mind and requires a plaintiff to show that a defendant "acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine*, F.4th at 317. Therefore, a plaintiff must plead facts in detail to make a proper showing.

But O'Boyle, makes only threadbare factual assertions in her Amended Complaint. They provide little support for the claim that the deputy jailers acted with deliberate indifference. For example, it is unclear whether O'Boyle's mental health condition was known to any or all of the deputy jailers, and she has pled few facts that could reasonably connect them with an intentional action that ignored her needs or recklessly failed to mitigate the risks associated with them. It is fundamental that complaints pleaded without mature claims against specific defendants invite dismissal to ensure basic fairness.

Within this circuit, "[t]he very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 599, 566 (6th Cir. 2003) (quotations omitted). Despite O'Boyle's intention of engaging in discovery as an antecedent for developing a well pled complaint, the horse must come before the cart. And at this stage, O'Boyle only identifies each of the deputy jailers as "one of the deputies responsible for pepper spraying and torturing" her without clearly specifying whether one or more engaged in that conduct or providing additional details that substantiate her claim. [Record No. 10] Thus, she fails to provide sufficient factual matter that sustains the claim of deliberate indifference against any of the deputy jailers.

The same fate befalls O'Boyle's claim of negligence against these defendants. Under Kentucky law, a plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, (3) consequent injury resulted, and (4) legal causation between the breach and injury. *See Vincent v. Warren* Cnty., 629 F. App'x 735, 739 (6th Cir. 2015); *see also Smith v. Franklin Cnty.*, 227 F. Supp. 2d 667, 682 (E.D. Ky. 2022); *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 92 (Ky. 2003). Failure to satisfy any one element is "fatal to a negligence claim." *City of Versailles v. Johnson*, 636 S.W.3d 480, 483 (Ky. 2021).

The inquiry in determining whether O'Boyle's negligence claim meets this initial threshold ends not far from where it begins. She alleges broadly that the deputy jailers had a "duty to comply with generally accepted medical standards of care." [Record No. 10] But the Commonwealth of Kentucky has charged jailers with the duty to "treat [detainees] humanely and furnish them with proper food and lodging and confinement," which likely includes summoning necessary medical care or assistance for instances of serious medical need. KRS § 71.040. The Commonwealth's regulations go further to account for the special relationship between jailer and detainee, outlining that "[e]mergency medical, vision, and dental care shall be available to all prisoners commensurate with the level of care available to the community."

But O'Boyle contends that the deputy jailers owed her more, such as a level of care more closely aligned with what medical professionals owe to pretrial detainees in custody. *See Phillips v. Tangilag*, 14 F.4th 524, 539 (6th Cir. 2021). Jailers, however, do not generally provide medical treatment, so the expectation that they owed her the same duty as medical professionals is inapposite. *Cf. Hall v. Midwest Bottled Gas Distrib., Inc.*, 532 S.W.2d 449, 452–53 (Ky. Ct. App. 1976) (discussing Jailer's duty to keep inmates safe from unnecessary

harm based on the special relationship between jail officials and inmates); *Ratliff v. Stanley*, 224 Ky. 819, 7 S.W.2d 230, 232 (App. 1928) (observing that the "law imposes a duty on a jailer to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody"). Rather, jailers have a duty to summon medical care—not to provide it—for inmates commensurate with the level of care available to individuals in the community, especially in cases of emergency. *See, e.g., Webb v. Jessamine Cnty. Fiscal Court*, 802 F. Supp. 2d 870, 876, 888-89 (E.D. Ky. 2011)

Both parties point to the holding in *Webb v. Jessamine County* because the facts and circumstances are like those O'Boyle allegedly experienced in detention. In that case, a district court granted summary judgment to three jailers who declined to provide emergency medical care for an inmate in labor despite their knowledge of the inmate's pregnancy. Only after receiving the pregnant inmate's complaints and witnessing her in labor did a fourth jailer, who happened to be a Certified Medical Assistant, maintain the requisite knowledge from which the duty to act arose.

In O'Boyle's case, the record reflects little about what the deputy jailers knew or should have known regarding her mental health condition. Further, her complaint does not characterize requests that she made to them for medical assistance, either individually or collectively. Based on the allegations contained in O'Boyle's Amended Complaint, it appears that none of the deputy jailers had the level of knowledge or quantum of information that gave rise to the duty to summon medical care by the lone jailer in *Webb*. At a minimum, deputy jailers like those here likely maintain some form of ministerial duty to uphold and enforce jail policies. *See generally Hedgepath v. Pelphrey*, 520 F. App'x 385, 389 (6th Cir. 2013). But

without additional facts and circumstances to consider, O'Boyle fails to describe with clarity any duty that the deputy jailers owed to her at all.

An analysis of the remaining elements provides little support to O'Boyle claims against the moving defendants at this stage of the proceedings. For example, even when a clear duty exists, a plaintiff must make a proper allegation to eventually demonstrate that it has been breached. Yet, O'Boyle's Amended Complaint not only falls short of articulating a duty owed to her, it also fails to characterize precisely how the deputy jailers breached it aside from overly-broad allegations that they pepper sprayed and tortured her. And beyond these deficiencies, O'Boyle fails to connect the deputy jailers specifically to a breach of duty that led to a particular injury. In short, the negligence claim asserted by O'Boyle against the deputy jailers is insufficiently pleaded as a matter of law, thus warranting dismissal.[4]

## IV. Conclusion

O'Boyle's Amended Complaint fails to present sufficient factual matter to plead a claim of deliberate indifference or negligence to survive the deputy jailer's motion to dismiss. For the reasons outlined above, it is hereby

**ORDERED** that Defendant Deanna Anglin's, Austin Pingleton's and Michael Pingleton's motion to dismiss claims asserted against them in their individual capacities based on alleged deliberate indifference under 42 U.S.C. § 1983, alleged violation[s] of the Kentucky Constitution, and state law negligence [Record No. 23] is **GRANTED**.

---

[4] The Court cannot address the statute of limitations issues raised by the parties because the record omits specific dates on which the alleged conducted occurred.

Dated: November 13, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky