UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| AMIE O'BOYLE, | ) |
| Plaintiff, | ) Civil Action No. 5: 23-061-DCR |
| V. | ) |
| MADISON COUNTY, KENTUCKY, et al., | ) **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Amie O'Boyle originally filed suit against Steve Tussey in his original capacity as jailer of the Madison County Detention Facility ("Detention Facility"). O'Boyle also asserted claims against Madison County, Kentucky, and others, asserting a variety of violations relating to the alleged deprivation of medical care while she was detained at the Detention Facility. [Record Nos. 1, 6, and 9] After Madison County moved to dismiss the official claims against it and Tussey, O'Boyle filed an Amended Complaint asserting claims against Tussey in his individual capacity. [Record Nos. 6 and 9]

This matter is pending for consideration of Tussey's motion to dismiss the claims against him for insufficient process, insufficient service of process, and lack of personal jurisdiction. [Record No. 39] For the reasons explained below, Tussey's motion will be denied, without prejudice.

## Background

O'Boyle was arrested on August 20, 2021, for careless driving, disregarding a traffic light, operating a motor vehicle under the influence of a controlled substance, and resisting

arrest. [Record No. 10] It is asserted that officials held her at the Detention Facility with knowledge that she suffered from "a serious mental health condition for which she needed medication." [Record No. 23] Months later, and after O'Boyle's husband hired an independent forensic psychological expert to confirm her condition, officials with the Detention Facility petitioned to declare O'Boyle disabled so that she could be transferred for treatment. *Id*. O'Boyle then entered Eastern State Hospital, a psychiatric institution, where she briefly recovered before being released. *Id*.

After filing suit on February 23, 2023, O'Boyle's counsel issued Summons for the original defendants, including Tussey in his official capacity as jailer at the Detention Facility. The Summons were addressed to the Madison County Attorney for the purpose of effectuating service. But soon after Madison County filed a motion to dismiss O'Boyle's claims against it and Tussey in his *official* capacity, O'Boyle filed an Amended Complaint naming Tussey as a defendant in his *individual* capacity.[1] [Record No. 10] The Amended Complaint did not include any new claims against him.

Nearly five months passed before O'Boyle properly served any defendant sued in an individual capacity pursuant to Rule 4 of the Federal Rules of Civil Procedure. Despite this unexplained delay, on August 3, 2023, O'Boyle asked the Court to issue Summonses to the newly added deputy jailers named in the Amended Complaint before completing service upon them. Purportedly under the assumption that Tussey had been sufficiently served as a defendant in his individual *and* official capacities with the original Complaint, O'Boyle did

---

[1] The Court ultimately terminated Defendant Madison County, Kentucky, and Jailer Tussey in his official capacity as defendants in this matter on June 13, 2023, after granting their motion to dismiss for insufficient process pursuant to Rule 4 and failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Record No. 15]

not attempt to effect service on him at that time. She later attempted to cure this failure by issuing a Summons for him on November 28, 2023. Tussey then moved to dismiss the claims against him, citing process and service deficiencies.

## Discussion

Service of process ensures that notice is given to a party facing suit in federal court. The federal system is underpinned by the general notion that its courts lack personal jurisdiction over an individual or an entity without proper service of process, consent to being sued, or a waiver. *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012). And the plaintiff bears the responsibility of showing that a defendant has been properly served. Rule 4(c)(1), FED. R. CIV. P.

A defendant may seek dismissal of a complaint for insufficient service of process if the plaintiff fails to effectuate proper service within ninety days of filing a suit. *See* Rule 4(m), Fed. R. Civ. P.; *see generally Habib v. General Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994). However, Rule 4(m) provides that a court "must extend the time for service for an appropriate period" after this deadline for service has passed if the plaintiff "shows good cause for the failure" to effect service in a timely manner. *See United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022). However, a plaintiff "bear the burden of showing good cause under Rule 4(m)." *Bradford v. Bracken Cnty*, 767 F. Supp. 2d 740, 753 (E.D. Ky. 2011).

### A. Service of the Complaint

O'Boyle attempted to serve Madison County and Steve Tussey in his official capacity with a copy of the Summons and the Complaint "via certified mail through the County Attorney." [Record No. 42] Kentucky law provides that a county facing suit may be served

by "serving the county judge or, *if he is absent from the county, the county attorney*." See Rule 4.04(7), Ky. R. Civ. P. As the undersigned has noted previously, courts have dismissed claims for failing to provide sufficient service of process under this state rule of civil procedure. *See, e.g., LeBlanc v. Hagan*, 2017 WL 2779490, at *4 (W.D. Ky. June 27, 2017) (dismissing plaintiffs' claims against the county because they "merely mailed the summons and Complaint to the county attorney's office but did not serve the county judge or show that the judge was absent"). And here, this Court dismissed the Complaint against Madison County because O'Boyle failed to establish that the county judge was absent as Kentucky Rule 4.04(7) before attempting to effectuate service through the county attorney. [Record No. 15]

The Court next considers whether dismissal of O'Boyle's claims against Madison County similarly extinguished her claims against Jailer Tussey in his official capacity. The Supreme Court has held that, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Madison County acknowledged as much in its motion to dismiss, noting that "O'Boyle sued Jailer Tussey *in his official capacity only*, so the claims against him are deemed to be against Madison County."[2] [Record No. 4] Thus, the inescapable conclusion is that

---

[2] O'Boyle did not challenge this assertion in her response to Madison County's motion. Perhaps in concession that her Complaint addressed only Tussey in his official capacity, O'Boyle subsequently added him in his personal capacity in her Amended Complaint the month after Madison County filed its motion.

O'Boyle's claims against Tussey in his official capacity were dismissed along with those against Madison County.[3]

The inquiry then shifts to evaluating whether claims made against a defendant dismissed along with his employer can be sustained against him in his personal capacity. The general rule provides that when a defendant is only named in his individual capacity after being named as a defendant in his official capacity, the defendant must be served separately to satisfy the due process requirement of notice. *See, e.g., Ermold v. Davis*, 2017 WL 10646454, at *1 (E.D. Ky. Oct. 11, 2017) ("Although the same operative facts give rise to Plaintiffs' official capacity and personal-capacity claims, they are distinct legal rights against different parties").

Even O'Boyle acknowledges that she used "a descriptor of Mr. Tussey as the Jailer of Madison County, in his official capacity" without any mention of a claim against him in his personal capacity. [Record No. 1, ¶ 6] In fact, O'Boyle identifies "Defendants, John Does (1-10), in their official and/or *individual capacity*" in the immediate paragraph after naming Tussey solely in his official capacity. [Record No. 1, ¶ 7] Therefore, the Court presumes that the Complaint's drafter intended to differentiate the claims asserted against the distinct classes of defendants.

Further, O'Boyle concedes that her characterization of Tussey as an "official capacity" defendant only in the Complaint was "inartful." But any assertion that this labeling sufficiently identifies him in his personal capacity contravenes prevailing law. The United States Court of Appeals for the Sixth Circuit has cautioned that "[i]t is not too much to ask that if a person or

---

[3] O'Boyle conceded in a footnote that "proper service was not obtained on Tussey" regarding the Complaint. [Record No. 45, p. 2] To the extent Tussey had constructive notice to some degree of the claims outlined against him in the Complaint by virtue of his employer or his participation in the case in his official capacity, those claims no longer exist.

entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually." *Lovelace v. O'Hara*, 985 F.2d 847, 850 (6th Cir. 1993) (quoting *Wells v. Brown*, 891 F.2d 591, (6th Cir. 1989) (quotations omitted). The bottom line is clear at this stage of the analysis: Tussey was improperly served with the Complaint and any claim levied against him in the Complaint no longer exists after Madison County's dismissal as a defendant.

### B. Service of the Amended Complaint

O'Boyle specifically joined Tussey as a defendant in his personal capacity in the Amended Complaint filed on April 19, 2023. Therefore, she was required to complete service of the Summons and Amended Complaint *after* naming him as a defendant for the first time in his personal capacity. However, until November 28, 2023, O'Boyle had not even attempted to effectuate proper service on Tussey. This was well outside the ninety-day period provided by Rule 4(m) of the Federal Rules of Civil Procedure. Based on this extended delay and additional procedural shortcomings, Tussey claims that O'Boyle improperly served him with the Amended Complaint and the procedural deficiencies cannot be cured.

Chronologically summarizing O'Boyle's attempts to effectuate service on Tussey in his personal capacity is useful. After the Court directed O'Boyle to Show Cause regarding her failure "to serve the remaining individual defendants," O'Boyle proceeded to serve deputy jailers nearly four months after filing the Amended Complaint by receiving a brief extension. However, until November, O'Boyle did not attempt to serve Tussey, even though service was not perfected. Specifically, the Summons O'Boyle served on Tussey was defective because it was not issued by the Clerk of the Court. *See* Rule 4(b), Fed. R. Civ. P. ("On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the

summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant."). Further, it did not contain a signature or the Court's seal. To compound this error, the defective Summons issued to Tussey was not accompanied by a copy of the Amended Complaint as required by Rule 4 of the Federal Rules of Civil Procedure.

Scrambling to salvage the remaining claims against Tussey, O'Boyle then filed a motion with the Court to issue a new Summons on December 19, 2023. [Record No. 42] The motion was granted and O'Boyle subsequently provided personal service to Tussey more than ten months after the case had been filed.

Based on the foregoing procedural history, the Court must address whether O'Boyle's delay can (or should) be excused. Under Rule 4 of the Federal Rules of Civil Procedure, when the plaintiff does not serve a defendant within ninety days after filing the complaint, the district court must dismiss the action without prejudice or order that proper service be effectuated. If, however, the plaintiff shows good cause for the deficient service, the court must extend the time for service.

The Sixth Circuit has provided a list of factors to consider in determining whether good cause has been shown for untimely service. More specifically, the Court considers: (1) whether an extension of time would be well beyond the timely service of process; (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit; (3) whether the defendant had actual notice of the lawsuit; (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, *i.e.*, would the plaintiff's lawsuit be time-barred; (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies; (6) whether the plaintiff is a *pro se* litigant deserving of additional latitude to correct defects in service of

process; and (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case. *United States v. Oakland Physicians Med. Ctr.*, LLC, 44 F.4th 565, 569 (6th Cir. 2022).

The first factor tilts in favor of granting Tussey's motion because one year has passed since she filed the Complaint, yet O'Boyle only recently completed service against him in his personal capacity. Additionally, O'Boyle's intransigence for "attempt[ing] to understand [the applicable] law when effecting service" hardly demonstrates diligence, even though she did attempt a flawed form of personal service on Tussey when his counsel began arguing that he had not been properly served. *See Savoie v. City of E. Lansing, Mich.*, 2022 WL 3643339, at *5 (6th Cir. 2022). O'Boyle's service errors are entirely of her own making and she does little to explain why so many avoidable procedural mistakes have been made. The Court concludes that factors five and six likewise counsel in favor of granting Tussey's motion.[4]

However, the Court is acutely aware of the impact that dismissing the "sole party responsible for the care and custody" of O'Boyle at the Detention Facility based on procedural deficiencies could mean for her case. [Record No. 45] And Tussey even concedes that he would not be prejudiced in any way other than having to defend against this suit. Thus, the second, fourth and seventh factors weigh decisively in favor of granting an extension.

Recognizing that dismissing Tussey as a defendant may severely damage O'Boyle's case, the undersigned concludes that the final evaluation must tip slightly toward O'Boyle. Accordingly, it is hereby

---

[4]   The Court is unable to determine whether Tussey had actual knowledge of the lawsuit. Tussey was named as a defendant from the start and has participated in the case as defendant in his official capacity. This suggests that he may have had actual notice of the lawsuit's existence for some of the intervening time since the lawsuit was filed.

**ORDERED** that Defendant Steve Tussey's motion to dismiss [Record No. 39] is **DENIED**.

Dated: March 11, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky