UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| AMIE O'BOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 23-061-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MADISON COUNTY, KENTUCKY, | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Amie O'Boyle originally filed suit against Madison County, Kentucky, and employees of the Madison County Detention Center on February 23, 2023. She claimed that she was deprived of medical care while detained. [Record Nos. 1, 6, and 9] O'Boyle subsequently filed an Amended Complaint on April 19, 2023, joining deputy jailers Deanna Anglin, Austin Pingleton, and Michael Pingleton as defendants in their individual capacities. She asserted force-related claims against them. [Record Nos. 6 and 9]

The deputy jailers have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that the claims O'Boyle asserted against them fall outside the applicable statute of limitations. On November 13, 2023, the Court dismissed some of O'Boyle's claims against the deputy jailers pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This earlier dismissal included claims of deliberate indifference under § 1983, alleged violations of the Kentucky Constitution, and claims of negligence under Kentucky common law. [Record No. 38] To determine whether the remaining claims of

- 1 -

excessive force and battery were timely pleaded, the Court granted the deputy jailers' motion to expedite discovery.  [Record No. 26]

Because no genuine issue of material fact exists regarding O'Boyle's untimely filing outside the applicable statute of limitations, the deputy jailers' present motion for summary judgment will be granted.

## I.   Background

As explained previously, Amie O'Boyle was arrested on August 20, 2021, for careless driving, disregarding a traffic light, operating a motor vehicle under the influence of a controlled substance, and resisting arrest.  [Record No. 10] She was taken to the Madison County Detention Center where officials "knew that [she] had a serious mental health condition for which she needed medication."  [Record No. 23] However, O'Boyle claims she was detained inexplicably for months without access to medication.

As a detainee, O'Boyle alleges that she was deprived of basic human necessities and "stripped naked, had her water cut off, and was left to wallow in her own feces because she was forced to use the toilet for drinking water" while in the care and custody of the deputy jailers.  [Record No. 10]  O'Boyle's husband subsequently paid for a forensic psychological expert to confirm her mental condition on January 21, 2022.  At that point, jail officials at the Detention Center petitioned for a hearing to declare her disabled.  And this step rendered her eligible for transfer to a medical facility.  *See* KRS 202A.[1]

---

[1]     The record fails to explain the gap between her arrival at the Detention Center and the events that led to the filing of a petition that ended her detention.

O'Boyle was transferred to Eastern State Hospital for brief psychological treatment as early as February 8, 2022.[2]  [Record Nos. 48-1, 48-2, 48-3]  Records indicate that, by the time O'Boyle was discharged weeks later (between March 1 and 8, 2022), she exhibited "[n]o evidence of psychomotor impairment."[3]  [Record Nos. 48, 54]  Additional records document that O'Boyle sought counseling in the weeks after her release from custody and subsequent discharge from the hospital.  O'Boyle represented at the time that she felt ashamed and embarrassed when recounting the details of her detention because the experience evoked feelings of trauma.

O'Boyle sought leave to join the deputy jailers as defendants more than a year after being transferred from the Detention Center to Eastern State Hospital and approximately four weeks after filing her Complaint.  She cites alleged memory delays in recalling the traumatic events and identifying specific individuals as the reason for not originally asserting claims against them.  Through the Amended Complaint, O'Boyle alleges that, in addition to depriving her of basic human necessities, the deputy jailers pepper sprayed and tortured her during the

---

[2]     Records from Eastern State Hospital indicate O'Boyle was admitted on February 8, 2022.  They also include notations of observations and test results in the days that followed.  But O'Boyle claimed in an interrogatory response that she began receiving treatment as late as February 28, 2022.  [Record No. 48] Regardless, the specific date of transfer from the Detention Center to the hospital within this range is not material to disposition of the current motion because O'Boyle filed her claims more than a year after the latest possible date on which she was a detainee.

[3]     Eastern State Hospital's records further indicate she was released on March 1, 2022.  But O'Boyle believes she was released on March 8, 2022.  However, she does not provide any documentation to refute these records or support her assertion.  Regardless of the exact date of her release, this factual discrepancy does not generate an issue of material fact based on her reported mental state at that time.

period of detention.  As a result, she now asserts a variety of impact-based claims against the deputy jailers, including excessive force and battery.

## II.     Legal Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 463-64 (6th Cir. 2014) (quoting FED. R. CIV. P. 56(a)).  When determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, "not every issue of fact or conflicting inference presents a genuine issue of material fact." S*treet v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The "mere possibility" of a factual dispute is insufficient.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

To avoid summary judgment, the nonmoving party must present "'evidence on which the jury could reasonably find'" in its favor.  *See Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III.     Discussion and Analysis

### A.  Statute of Limitations

The issue before the Court is whether O'Boyle's remaining claims against the deputy jailers are time-barred.

Applicable law indicates that these claims are subject to a one-year statute of limitations.  *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) ("Section 1983 actions in Kentucky are limited by the one-year statute of limitations found in §

413.140(1)(a)"); *see also* KRS 413.140(1)(a) (actions for personal injury).  The statute of limitations applicable to O'Boyle's § 1983 claims for excessive force commenced "when the reasonable person knows, or in the exercise of due diligence should have known, both [her] injury and the cause of that injury." *Bishop v. Child's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010) (quoting *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)).  Therefore, the excessive force claims commenced on the date of the alleged use of force by the deputy jailers.  *See Hodge v. City of Elyria*, 126 F. App'x 222, 225 (6th Cir. 2005).  Likewise, the statute of limitations for O'Boyle's state law battery claim commenced on "the date of the encounter."  *See Gibson v. Slone*, 2011 WL 2009815, at *1 (E.D. Ky. May 23, 2011).

O'Boyle has never specified when the excessive uses of force or batteries occurred, claiming she is unable to recall the exact dates based on her psychological state at the time of the events.  But based on hospital admission records, the deputy jailers provide that the latest date on which they could have engaged in the alleged pepper spraying or "torture" was on or around February 8, 2022.  Therefore, O'Boyle could have timely pleaded the instant claims within a year of that date.

However, O'Boyle did not plead her claims against the deputy jailers within this window.  Instead, she sought leave to amend her complaint to join these defendants on March 20, 2023—more than one year after the final date on which they could have battered or used excessive force against her.  *See Shillman v. U.S.*, 221 F.3d 1336 (Table) WL 923761, at *6 (6th Cir. June 29, 2000) ("If a motion to amend is granted, the complaint is deemed amended as of the date the proponent of the amendment sought leave to amend, and not when the request is actually granted.").  Thus, her claims against the deputy jailers are untimely.

- 5 -

And as the defendants emphasize, "an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010); FED. R. CIV. P. 15(c).  The deputy jailers were only joined as defendants in the Amended Complaint, which effectively created a new cause of action.  Likewise, Rule 15(c)(1)(B) prevents the claims pleaded in her Amended Complaint from relating back to the original Complaint because O'Boyle initially only raised claims relating to an alleged deprivation of health care.  FED. R. CIV. P. 15(c)(1)(B).

### B.  Equitable Tolling

The doctrine of equitable tolling may spare claims filed outside the statute of limitations if the litigant establishes: (1) she has been pursuing her rights diligently and (2) some extraordinary circumstance stood in her way of pleading the claims in a timely fashion.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  The Supreme Court, however, has emphasized that the doctrine should be applied "sparingly."  *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *see also Wallace v. Kato*, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.").  As a result, the plaintiff retains the "ultimate burden of persuading the court that he or she is entitled to equitable tolling."  *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012).

In addition to the foregoing, the Sixth Circuit has identified the following list of non-exhaustive factors to be considered when determining whether equitable tolling applies: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of

prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the legal requirement for filing her claim. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 437 (6th Cir. 2007).

These factors weigh against tolling under the facts presented by this case. First, O'Boyle has not been diligent, and she largely fails to provide a sufficient explanation for her failure to assert claims against the deputy jailers before the end of the limitations period. Rather, she contends that she "requested access to the video records of her stay [] Detention Center through [Freedom of Information Act], without response, and discovery has been delayed." [Record No. 52] This unanswered request under the Freedom of Information Act ("FOIA") was made to fill factual gaps regarding her experience while detained. Yet she does not specify when she sent the alleged request for the jail videos, rendering it is impossible to determine whether the defendants' failure to respond impacted her ability to pursue the claims within the limitations period. *See Jennings v. Monroe Cnty.*, 630 Fed. App. 547, 555 (6th Cir. 2015) (quoting *Gooden v. City of Memphis Police Dep't*, 67 Fed. App. 893, 894 (6th Cir. 2003)) ("A party cannot defeat summary judgment with '[c]onclusory allegations, speculation, and unsubstantiated assertions.'"). And while O'Boyle argues that her extended recovery from the traumatic events she experienced should constitute an extraordinary event that prevented her from filing timely claims, her reported mental state at the time she was discharged from Eastern State Hospital makes it difficult to fathom that she was unable to tend to her legal affairs for more than a year.

Separately, O'Boyle claims that the Court "has not allowed [her] to perform even a shred of discovery," but the record reflects otherwise. The Court expressly provided the parties with an opportunity to conduct discovery regarding the statute of limitations issue,

acknowledging that "the viability of O'Boyle's claims against the deputy jailers depends on when she properly raised them." [Record No. 26]  The record further confirms that O'Boyle's counsel initially sent interrogatories to the deputy jailers in late September 2023, or nearly six months after joining them as defendants in her Amended Complaint.  After missing several procedural deadlines, it is difficult to describe O'Boyle's efforts to pursue her claims as diligent when it appears her counsel has been dilatory.  Therefore, heeding the Supreme Court's advice that courts should generally refrain from providing discretionary equitable relief unless extraordinary circumstances counsel otherwise, the undersigned declines exercise discretion where it does not appear warranted.

O'Boyle's final attempt at salvaging her claim rests on state law.  Indeed, courts may toll a statute of limitations for a claim under Kentucky law if a plaintiff was of an unsound mind when the limitations period ended.  And assuming the complainant can make this showing, "the action may be brought within the same number of years after the removal of the disability. . . allowed to a person without the disability to bring the action after the right accrued."  *See* KRS 413.170(1).  In other words, the claimant may convince a court to move the goal posts regarding a filing deadline.  However, the complainant "must come forward with 'hard evidence' of unsoundness to defeat summary judgment."  *Jeffries v. Barnes*, 2019 WL 2246060, at *4 (Ky. App. May 24, 2019) (quoting *Se. Ky. Baptist Hosp. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988).

Under Kentucky law, a person is of unsound mind when "[s]he has been rendered incapable of managing [her] own affairs."  *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 296 (Ky. App. 1993) (citing *Gaylor*, 756 S.W.2d 467).  Further, the hallmark of an unsound mind determination is an individual's inability to take care of her relevant legal

affairs.  *See Jeffries*, 2019 WL 2246060, at *3 ("[T]he discrete subject matter at hand is whether [the claimant] had the mental capacity to take care of her legal affairs in a timely manner.") (discussing *Stair v. Gilbert*, 272 S.W. 732, 734 (Ky. 1925)).  Analogizing to the defendant who was beaten unconscious by jailers in *Green v. Floyd Cnty., Ky.*, 803 F. Supp. 2d 652 (E.D. Ky. 2011), O'Boyle argues that she was "completely out of her mind during the duration of the abuse she endured in the Madison County Detention Center" without her medications.  [Record No. 52]  She further argues that,

> [b]ecause of [her] lack of mental capacity, her 'disability' [pursuant to KRS 413.170(1)] would have continued at the very least until she was released from Eastern State.  And while [she] may have been able to finally function as a human being after her stay at Eastern State, that does not mean that the disability was 'removed' just because she was released.  [O'Boyle] requires continued treatment and even as late as December 2023 was unable to participate in trauma therapy because talking about the incident was "too intense."

*Id*.

The Sixth Circuit, however, has concluded that mental distress and memory impairment—the conditions on which O'Boyle's tolling argument hinges—are insufficient to demonstrate that a claimant was of an unsound mind.  *McCord v. Bd. of Educ. of Fleming Cnty., Ky.*, No. 17-5548, 2018 WL 1724560, at *4 (6th Cir. Jan. 30, 2018); *see also Tidaback v. City of Georgetown*, 2017 WL 1217165, at *5 (E.D. Ky. Mar. 31, 2017) (The "vague allegation of temporary memory loss with respect to the events at the jail do not equal an allegation of 'unsound mind' sufficient to toll the statute of limitations under KRS § 413.170(1).").

Even if the Court accepted that O'Boyle was indeed "completely out of her mind" during her incarceration, it would be required to address the point in time her disability was removed.  Of course, a disputed series of events and circumstances could present issues of

material fact that would preclude summary judgment.  Here, however, the record provides clarity.  In contrast to the victim in *Green* who remained under a custodial guardianship because of severe cognitive limitations throughout the litigation, O'Boyle acknowledged in her Amended Complaint that she had recovered by the time she was released from Eastern State Hospital.  [Record No. 10, ¶ 30] ("Plaintiff was released from Eastern State Hospital in full recovery . . .").  Subsequent records from O'Boyle's therapist likewise does not suggest her mental state was unsound despite her reported feelings of extreme anxiety and depression shortly after being released.

O'Boyle admittedly had regained a sufficient level of mental clarity around the time the limitations period ran that would preclude tolling under the relevant statute.  Based on her own admission, the latest point in time after the removal of her disability would have been March 8, 2022.  And while O'Boyle may now dispute the extent to which she had recovered by her date of discharge from Eastern State Hospital where she "left in full recovery," precedent from this circuit emphasizes that "[p]laintiffs are bound by admissions in their pleadings," which "can undermine the timeliness of a plaintiff's claim."  *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000).  As a result, the carve-out in Kentucky law that could toll the limitations period is not applicable to O'Boyle.

## IV.

There are no genuine issues of material fact regarding the statute of limitations applicable to claims asserted against the moving defendants and the subject of the present motion.  O'Boyle's claims remaining claims against the deputy jailers are time-barred and these defendants are entitled to summary judgment as a matter of law.  Therefore, being sufficiently advised, it is hereby

**ORDERED** that the defendants' motion for summary judgment [Record No. 48] is **GRANTED**. All remaining claims against Defendants Deanna Anglin, Austin Pingleton, and Michael Pingleton are **DISMISSED**, with prejudice.

Dated: April 29, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky