UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| AMIE O'BOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 23-061-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MADISON COUNTY, KENTUCKY, | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Amie O'Boyle originally filed suit against Steve Tussey, the jailer at the Madison County Detention Center ("Detention Center") in his official capacity, as well as Madison County, Kentucky and others.  O'Boyle asserted various claims in her Complaint against the defendants emanating from alleged deprivation of medical care while detained at the Detention Center.  [Record Nos. 1, 6, and 9] After Madison County submitted a motion to dismiss the official claims against it and Jailer Tussey, O'Boyle filed an Amended Complaint asserting claims against Tussey in his individual capacity.[1]  [Record Nos. 6 and 9]  O'Boyle added force-related claims against Tussey and others in this amended filing.  Tussey has now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Having fully considered the parties briefs, Tussey's motion will be granted for the reasons that follow.

---

[1]     The Court dismissed Madison County as a defendant and all associated official capacity claims on June 13, 2023.  [Record No. 15]

**Background**

Amie O'Boyle was arrested on August 20, 2021, for careless driving, disregarding a traffic light, operating a motor vehicle under the influence of a controlled substance, and resisting arrest. [Record No. 10] She was taken to the Madison County Detention Center, where officials "knew that [she] had a serious mental health condition for which she needed medication." [Record No. 23] O'Boyle claims she was detained inexplicably for months without access to her medication.

O'Boyle alleges she was deprived of basic human necessities and "stripped naked, had her water cut off, and was left to wallow in her own feces because she was forced to use the toilet for drinking water" in the care and custody of jail officials. [Record No. 10] And she specifically claims that Tussey "never pursued or finalized a 202[A] hearing as was called for in all three . . . jail triage reports" that would have rendered her eligible for transfer to a medical facility.[2] *See* KRS 202A. O'Boyle's husband subsequently paid for a forensic psychological expert to confirm her mental condition on January 21, 2022, presumably because no official had initiated the process outlined in KRS 202A to hold a hearing. At that point, jail officials petitioned for a hearing to declare her disabled.

O'Boyle was transferred to Eastern State Hospital for brief psychological treatment as early as February 8, 2022. [Record Nos. 48-1, 48-2, 48-3] By the time O'Boyle was discharged (between March 1 and 8, 2022), records indicate that she exhibited "[n]o evidence

---

[2] The record fails to explain the gap between the plaintiff's arrival at the Detention Center and the events that led to the filing of a petition that ended her detention.

of psychomotor impairment."[3]  [Record Nos. 48, 54]  Additional records indicate that O'Boyle sought counseling in the weeks after her release from custody and subsequent discharge from hospitalization.  O'Boyle represented at the time that she felt ashamed and embarrassed when recounting the details of her detention because the experience evoked feelings of trauma.

O'Boyle sought leave to join Tussey as a defendant in his individual capacity more than a year after being transferred from the Detention Center to Eastern State Hospital and approximately four weeks after filing her Complaint.  She cites alleged memory delays in recalling the traumatic events and identifying other individuals connected to them as the reason why she did not originally plead claims against Tussey in his individual capacity.  O'Boyle asserted a variety of impact-based claims against Tussey and others in her Amended Complaint.  Specifically, she included claims against Tussey under 42 U.S.C. § 1983 and the Kentucky Constitution for excessive force and deliberate indifference to her serious medical needs, as well as a claim of common law negligence under Kentucky law.

## Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 463-64 (6th Cir. 2014) (quoting FED. R. CIV. P. 56(a)).  When determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita*

---

[3]     Eastern State Hospital records indicate the plaintiff was released on March 1, 2022, but O'Boyle believes she was released on March 8, 2022.  However, she does not provide any documentation that refutes the hospital's document or supports her assertion.  This discrepancy, however, does not create an issue of material fact based on her reported mental state at the time of her release, regardless of the exact date.

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "not every issue of fact or conflicting inference presents a genuine issue of material fact." S*treet v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The "mere possibility" of a factual dispute is insufficient. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). To avoid summary judgment, the nonmoving party must present "'evidence on which the jury could reasonably find'" in its favor. *See Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**Discussion**

A.  Statute of Limitations

At this time, the primary issue is whether O'Boyle's claims against Tussey in his individual capacity were timely pleaded. Applicable law indicates that these claims are subject to a one-year statute of limitations. *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) ("Section 1983 actions in Kentucky are limited by the one-year statute of limitations found in § 413.140(1)(a)"); *see also* KRS 413.140(1)(a) (noting Kentucky law provides that personal-injury torts have a one-year statute of limitations). Here, the applicable statute of limitations regarding O'Boyle's Section 1983 claims began to run "when the reasonable person knows, or in the exercise of due diligence should have known, both [her] injury and the cause of that injury." *Bishop v. Child's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010) (quoting *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)). Therefore, the excessive force claims began to run on the date of the alleged use of force by Tussey. *See Hodge v. City of Elyria*, 126 F. App'x 222, 225 (6th Cir. 2005).

O'Boyle has never indicated the exact dates on which the alleged events occurred, claiming she is unable to recall certain details based on her psychological state at that time. But based on hospital admission records, Tussey concluded that the latest date on which he could have committed any of the alleged acts against O'Boyle was on or around February 8, 2022. Therefore, O'Boyle could have timely pleaded the instant claims within a year of this date. However, O'Boyle did not plead the remaining claims against Tussey within this window. She sought leave to amend her complaint to join him as a defendant in his individual capacity on March 20, 2023—more than one year after the final date on which Tussey could have used excessive force, been deliberately indifferent, or acted negligently toward her. *See Shillman v. U.S.*, 221 F.3d 1336 (Table) WL 923761, at *6 (6th Cir. June 29, 2000) ("If a motion to amend is granted, the complaint is deemed amended as of the date the proponent of the amendment sought leave to amend, and not when the request is actually granted."). Therefore, her remaining claims against Tussey were filed outside the statute of limitations.

Rule 15 of the Federal Rules of Civil Procedure accounts for situations where claims asserted after a Complaint is filed may relate back to the original filing in certain circumstances for timeliness purposes. Rule 15(c)(1) provides that an amendment to a pleading relates back to the date of the original pleading when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

- 5 -

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1)(B)-(C).

At the outset, it is far from clear that the claims identified in the Complaint and in the Amended Complaint are from the same conduct, transaction, or occurrence as required by Rule 15(c)(1)(B). Specifically, the claims identified against Tussey in the Complaint focused on an alleged deprivation of healthcare while those contained in the Amended Complaint are impact-based. Nonetheless, the Court analyzes the remaining requirements in Rule 15(c)(1) to confirm that the untimely pleaded claims cannot relate back to the Complaint.

Tussey argues that O'Boyle's Amended Complaint joining him as a defendant in his individual capacity does not relate back to the Complaint where he was named only in his official capacity because "an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010). Indeed, the Court previously treated his official capacity claims as claims asserted against Madison County. [Record No. 53] And as Tussey acknowledges, O'Boyle continued asserting claims against Madison County in the Amended Complaint. Therefore, it appears O'Boyle added claims against Tussey as a new party to the action by naming him in his personal capacity in the Amended Complaint. *See Smith v. City of Corbin*, 2012 WL 12925350, at *2 (E.D. Ky. Dec. 3, 2012) (concluding that adding claims against a defendant in his personal capacity after previously only asserting them against the same defendant in his official capacity creates a new party); *Ermold v. David*, 2017 WL 10646454, at *1 (E.D. Ky. Oct. 11, 2017) ("Although the same

- 6 -

operative facts give rise to Plaintiff's official-capacity and personal-capacity claims, they are distinct legal rights against different parties.").

Rule 15(c)(1)(C)(i) requires that a party must have been given notice of the action to avoid prejudice for the amended filing to relate back to the original. In this case, O'Boyle argues that Tussey had "actual notice" because he has been a named defendant from the beginning of this action. O'Boyle cites a Kentucky state case where even unidentified defendants were found to have received notice of a lawsuit despite being named six months after the statute of limitations had run because an "identity of interest existed between the named parties" and the John Does. *Cornelius v. Louisville Metro Dep't of Corr.*, 2018 WL 3602949 (Ky. Ct. App. July 27, 2018). But "the question of whether an amendment relates back to the date of the original complaint is a question of federal procedure not controlled by state law." *Simmons v. South Cent. Skyworker's, Inc.*, 936 F.2d 268, 270 (6th Cir. 1991).

O'Boyle also points to a Sixth Circuit case where the notice requirement had been satisfied because "knowledge" of an action "was imputed to the newly added [individual] defendants" for being "officials of the original defendant." *Berndt v. Tennessee*, 796 F.2d 879, 884 (6th Cir. 1996). As an analog, O'Boyle likely received notice of the action and the possible liability he faced in his individual capacity by being an official of Madison County—and as a named defendant in his official capacity. The Court concludes that Tussey likely received sufficient notice of the possible liability he faced at the time the Complaint was filed, satisfying Rule 15(c)(1)(C)(i).

However, O'Boyle's success in carrying the burden of proving that the Amended Complaint relates back ends there. As required by Rule 15(c)(1)(C)(ii), the defendant also must have known or should have known "that the action would have been brought against

[him], but for a mistake concerning the proper party's identity." In *Lovelace v. O'Hara*, 985 F.2d 847, 850 (6th Cir. 1993), the Sixth Circuit held that no mistake exists where a Complaint asserts official-capacity claims and "evidences an intentional choice by [the plaintiff's attorney] to bring an official capacity suit." Further, "[t]hat such a choice may not have been wise and that the attorney later sought to change it is insufficient to invoke relation back of the amendment under" Rule 15(c). *Id*. at 850-851. The Sixth Circuit continued that, "[w]ith such a clear statement in the pleadings, [the defendant] had no reason to believe that he was being sued in his personal capacity or that, but for a mistake concerning identity, the suit would have been against him personally." *Id*. at 851. Here, O'Boyle made a clear and intentional statement by filing the Complaint without naming Tussey in his personal capacity. Therefore, Tussey had no reason to believe when claims were filed against him in his official capacity that he would also be subsequently named in his personal capacity.

In summary, O'Boyle joined Tussey in his individual capacity in the Amended Complaint without satisfying the requirements of relating back to the Complaint where he was joined as a defendant in his official capacity. Therefore, O'Boyle's remaining claims against Tussey pleaded in the Amended Complaint were time-barred and Rule 15(c)(1) cannot provide procedural relief.

### B. Equitable Tolling

As a general matter, the Court is not required to dispose of all untimely filed claims. The doctrine of equitable tolling may spare claims filed outside the statute of limitations if the litigant establishes that: (1) she has been pursuing her rights diligently and (2) some extraordinary circumstance stood in her way of pleading the claims in a timely fashion. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). However, the doctrine should be applied

- 8 -

"sparingly." *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *see also Wallace v. Kato*, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."). As a result, the plaintiff bears the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012).

Additionally, the Sixth Circuit has identified the following list of non-exhaustive factors to be considered when determining whether equitable tolling should be applied: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the legal requirement for filing her claim. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 437 (6th Cir. 2007).

The factors that are applicable here weigh heavily against tolling. As the Court has noted previously, it does not appear that O'Boyle has been diligent, and she largely fails to provide a sufficient explanation for her failure to file the force-related claims against Tussey before the end of the limitations period. She attempts to justify the delays her case has experienced by arguing that her "[Freedom of Information Act] requests and discovery requests have gone unanswered and/or denied." [Record No. 57] According to O'Boyle, this unanswered request under the Freedom of Information Act ("FOIA") was made to fill factual gaps regarding her experience while detained. Yet, she does not specify when she sent the alleged request for the jail videos, preventing the Court from determining whether the failure to respond impacted her ability to pursue the claims within the limitations period. *See Jennings v. Monroe Cnty.*, 630 Fed. App. 547, 555 (6th Cir. 2015) (quoting *Gooden v. City of Memphis*

*Police Dep't*, 67 Fed. App. 893, 894 (6th Cir. 2003)) ("A party cannot defeat summary judgment with '[c]onclusory allegations, speculation, and unsubstantiated assertions.'"). And while O'Boyle argues that her extended recovery from the traumatic events she experienced constitutes an extraordinary event that prevented her from filing timely claims, her reported mental state at the time she was discharged from Eastern State Hospital does not support the assertion that she was unable to tend to her legal affairs for more than a year.

Next, O'Boyle cannot argue that she has lacked notice of the filing deadlines because she has been represented by the same counsel throughout this action. And after missing several procedural deadlines, it is difficult to describe O'Boyle's efforts to pursue her claims as diligent when it appears her counsel has been dilatory. For example, Tussey was only served in his personal capacity in December 2023, even though the Complaint and Amended Complaint were filed many months earlier. [Record No. 53] Therefore, heeding the Supreme Court's advice that courts should generally refrain from providing discretionary equitable relief unless extraordinary circumstances counsel otherwise, this Court declines to exercise discretion to do so where it is not warranted.

O'Boyle's relies on state law in a final attempt to salvage her claims against Tussey. Courts should toll a statute of limitations for a claim under state law if a plaintiff was of an unsound mind when the limitations period ended. Assuming the complainant can make this showing, "the action may be brought within the same number of years after the removal of the disability. . . allowed to a person without the disability to bring the action after the right accrued." *See* KRS 413.170(1). In other words, the claimant can convince a court to move the goal posts regarding a filing deadline. However, as the Court has noted before in this case, the complainant "must come forward with 'hard evidence' of unsoundness to defeat summary

- 10 -

judgment." *Jeffries v. Barnes*, 2019 WL 2246060, at \*4 (Ky. App. May 24, 2019) (quoting *Se. Ky. Baptist Hosp. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988).

Under Kentucky law, a person is of unsound mind when "[s]he has been rendered incapable of managing [her] own affairs." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 296 (Ky. App. 1993) (citing *Gaylor*, 756 S.W.2d 467).  Further, the hallmark of an unsound mind is an individual's inability to take care of her relevant legal affairs.  *See Jeffries*, 2019 WL 2246060, at \*3 ("[T]he discrete subject matter at hand is whether [the claimant] had the mental capacity to take care of her legal affairs in a timely manner.") (discussing *Stair v. Gilbert*, 272 S.W. 732, 734 (Ky. 1925)).  Analogizing to the defendant who was beaten unconscious by jailers in *Green v. Floyd Cnty., Ky.*, 803 F. Supp. 2d 652 (E.D. Ky. 2011), O'Boyle argues that she was "mentally incompetent" throughout the duration of her detention without her medications.  [Record No. 57]  She further argues that "her memory remained shut down for many months after her release" from the Detention Center.  *Id.*

But as the Sixth Circuit has held, mental distress and various forms of memory impairment—the conditions on which O'Boyle's tolling argument hinges—are insufficient to show a claimant was of an unsound mind.  *McCord v. Bd. of Educ. of Fleming Cnty., Ky.*, No. 17-5548, 2018 WL 1724560, at \*4 (6th Cir. Jan. 30, 2018); *see also Tidaback v. City of Georgetown*, 2017 WL 1217165, at \*5 (E.D. Ky. Mar. 31, 2017) (The "vague allegation of temporary memory loss with respect to the events at the jail do not equal an allegation of unsound mind sufficient to toll the statute of limitations under KRS § 413.170(1).") (quotations omitted).  Specifically, repressed memories and memory loss are also "not synonymous with being of unsound mind," especially where there is no evidence the impaired memory rendered the plaintiff incapable of managing their legal affairs.  *See Floyd v. Roman Catholic Diocese*

- 11 -

*of Owensboro*, 2008 WL 2550661, at *2 (Ky. App. June 27, 2008); *Tidaback v. City of Georgetown*, 2017 WL 1217165, at *5 (E.D. Ky. Mar. 31, 2017) ("[V]ague allegation of 'temporary memory loss' with respect to the events at the jail do not equal an allegation of 'unsound mind' sufficient to toll the statute of limitations under KRS § 413.170(1).").

Even if the Court accepts that O'Boyle was indeed "mentally incompetent" during her incarceration, it would be required to determine the point in time her disability was removed. As previously noted, a disputed series of events and circumstances could present issues of material fact that would preclude summary judgment. Here, however, the record provides clarity. In contrast to the victim in *Green* who remained under a custodial guardianship because of severe cognitive limitations throughout the litigation, O'Boyle acknowledged in her Amended Complaint that she had recovered by the time she was released from Eastern State Hospital. [Record No. 10, ¶ 30] ("Plaintiff was released from Eastern State Hospital in full recovery…"). Likewise, subsequent records from O'Boyle's therapist do not suggest O'Boyle's mental state was unsound despite her reported feelings of extreme anxiety and depression shortly after being released.

Again, as the Court concluded previously, O'Boyle admittedly had regained a sufficient level of mental clarity around the time the limitations period ran, which would preclude tolling. Even though O'Boyle may presently dispute the *extent* to which she had recovered by her date of discharge from Eastern State Hospital where she "left in full recovery," precedent within this circuit emphasizes that "[p]laintiffs are bound by admissions in their pleadings," which "can undermine the timeliness of a plaintiff's claim." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000). As a result, the carve-out that could toll the limitations period is not

applicable to O'Boyle because she sought leave to join Tussey more than a year after her disability had been removed.

### Conclusion

There are no genuine issues of material fact regarding the statute of limitations applicable to claims asserted against the moving defendant. O'Boyle's claims remaining claims against Jailer Steve Tussey are time-barred, entitling the defendant to summary judgment as a matter of law.

Being sufficiently advised, it is hereby **ORDERED** as follows:

1.    Defendant Steve Tussey's motion for summary judgment [Record No. 56] is **GRANTED**.  All remaining claims against this defendant are **DISMISSED**, with prejudice.

2.    Defendant Steve Tussey's motion to dismiss [Record No. 55] is **DENIED** as moot.

Dated: July 15, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

- 13 -